UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES M. TIBOR, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:19-cv-03667 |
| CENTRAL PORTFOLIO CONTROL, INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

**NOW COMES** James M. Tibor ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of Central Portfolio Control, Inc. ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois, a substantial portion of the events or omissions giving rise to

1

the claims occurred within the Northern District of Illinois, and Plaintiff resides in the Northern District of Illinois.

## PARTIES

5. Plaintiff is a natural person over 18-years-of-age who resides in the Northern District of Illinois and is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

6. Defendant is a debt collection agency with its principal place of business located at 10249 Yellow Circle Drive, Suite 200, Hopkins, Minnesota 55343.

7. Defendant is a debt collector engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others. Defendant uses the mail and/or telephone for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in the State of Illinois.

## FACTS SUPPORTING CAUSES OF ACTION

8. In or around March 2019, Defendant began placing collection calls to Plaintiff's cellular telephone number (630) XXX-2187.

9. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone ending in 2187.

10. Immediately after the calls began, Plaintiff answered a phone call to his cellular telephone from a representative of Defendant. The representative informed Plaintiff that it was looking for RJ Ramos ("Ramos") to collect on an outstanding debt.

11. Plaintiff was perplexed why Defendant was calling him because the debt Defendant was attempting to collect did not belong to him.

12. Plaintiff notified Defendant that the debt does not belong to him, he is not RJ Ramos, and demanded that Defendant cease calls to his cellular phone.

13. Plaintiff *never* provided his cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.[1]

14. Plaintiff answered numerous calls from Defendant, and in each answered call, informed Defendant that the number ending in 2187 does not belong to an individual named Ramos and demanded that Defendant cease its calls to Plaintiff's cellular telephone immediately.

15. On March 29, 2019, Plaintiff was forced to send Defendant a cease and desist letter requesting it to cease all communications with him.

16. Despite Plaintiff's requests, Defendant continued to call Plaintiff attempting to collect the debt from Plaintiff personally.

17. On May 10, 2019, Plaintiff sent *another* letter to Defendant requesting it again to cease contacting him as he is not RJ Ramos.

18. Notwithstanding Plaintiff's numerous oral and writer requests that Defendant's collection calls cease, Defendant placed or caused to be placed numerous phone calls between March 2019 through the present day in an attempt to collect on a defaulted debt belonging to Ramos.

19. Plaintiff's demands that Defendant's phone calls cease went unheeded and Defendant continued its phone harassment campaign.

20. Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone from March 2019 through the present day.

---

[1] Upon information and belief, Defendant obtained Plaintiff's cellular telephone number through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

21. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

22. Specifically, there would be an approximate 2 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

23. Moreover, Plaintiff also hears what sounds to be call center noise in the background of Defendant's calls.

24. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts.

25. The phone numbers that Defendant most often used to contact Plaintiff are (952) 582-6086, (515) 612-7432, (201) 215-2778, and (218) 206-9470, but upon information and belief, it may have used other phone numbers to place calls to Plaintiff's cellular phone.

26.

### DAMAGES

27. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

28. Plaintiff incurred certified-mail expenses, frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, and tracking the status of his disputes.

29. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the incessant phone calls,

4

aggravation that accompanies unsolicited telephone calls, pecuniary loss, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

30. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

31. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

32. Plaintiff restates and realleges paragraphs 1 through 30 as though fully set forth herein.

33. Defendant repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

34. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

35. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an ATDS to place calls to Plaintiff's cellular telephone.

36. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

37. Plaintiff does not have any business relationship with Defendant nor has he given it permission to call his cellular phone. Defendant was calling Plaintiff's cellular phone looking for a different party. As such, he could not have given Defendant consent to contact him on his cellular telephone.

38. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone from March 2019 through the present day, using an ATDS without his prior consent.

39. Any prior consent, if any, was revoked by Plaintiff's numerous verbal and written revocations.

40. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

41. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

42. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

43. The calls placed by Defendant to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

44. Defendant, through its agents, representatives, vendors, third-party contractors, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

45. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, JAMES M. TIBOR, respectfully requests that this Honorable Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

    c. Enjoining Defendant from further contacting Plaintiff; and

    d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

46. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

47. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

48. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

49. Moreover, Defendant is a "debt collector" because it acquired rights to the debt after it was in default. 15 U.S.C. §1692a(6).

50. The debt in which Defendant attempting to collect upon is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

51. Defendant used the phone to attempt to collect the debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

52. Defendant's communications to Plaintiff were made in connection with the collection of the debt.

53. Defendant violated 15 U.S.C. §§1692b(3), c(a)(1), c(b), d, d(5), e, e(10), f, and f(1) through its unlawful debt collection practices on a debt that never belonged to Plaintiff.

    a. **Violations of FDCPA § 1692b**

54. Defendant violated §1692b(3) by contacting Plaintiff on multiple occasions seeking to collect upon a debt for an individual named Ramos. Plaintiff repeatedly advised Defendant that it was calling the wrong person, so Defendant had more than enough information to know that the number it was calling did not belong to this unknown person. The fact that it was looking to speak with a male named Donald, but continuously called Plaintiff, whose name is James, is illustrative of Defendant's unfair practice. Armed with this knowledge, Defendant still continued to call Plaintiff's cellular phone multiple times without his prior consent.

    b. **Violations of FDCPA § 1692c**

55. Defendant violated §1692c(a)(1) and c(b) when it continuously called Plaintiff after being notified to stop on separate occasions. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over after he demanded that it cease contacting him was harassing and abusive. Even after being told to stop contacting him, Defendant continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff into paying a debt that he did not legally owe as it belonged to an individual with the name Ramos.

56. Furthermore, Defendant has relentlessly called Plaintiff on numerous occasions. This volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing him into submission.

57. Defendant was repeatedly notified by Plaintiff that he is not Ramos and that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient, unwanted, and distressing to him.

### c. Violations of FDCPA § 1692d

58. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment on a debt that did not belong to him. Moreover, Defendant continued placing the relentless calls after Plaintiff put Defendant on notice that he is not Ramos and demanded that the calls cease verbally and in writing.

59. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of a debt not owed by Plaintiff with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone from March 2019 through the present day, using an ATDS without his prior consent.

### d. Violations of FDCPA § 1692e

60. Defendant violated §1692e and e(10) when it used deceptive means to collect and/or attempt to collect the alleged debt. Defendant repeatedly contacted the wrong party seeking to collect upon a debt. Even after being apprised of its unlawful acts on multiple occasions, Defendant continued its harassing behavior by calling Plaintiff incessantly in a deceptive attempt to dragoon him to answer its calls and ultimately make a payment, even though the debt did not belong to him. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to contact him via an automated system when it never had consent to do so in the first place.

**e. Violations of FDCPA § 1692f**

61. Defendant violated §1692f and f(1) when it unfairly and unconscionably attempted to collect on a debt by continuously calling Plaintiff and asking to speak with an individual who was not Plaintiff. Defendant repeatedly asked to speak with an individual by the name of Ramos, attempting to dragoon Plaintiff into making a payment that he did not legally owe. By placing voluminous phone calls after becoming privy to the fact that it is contacting the wrong person is unfair and unconscionable behavior. These means employed by Defendant only served to worry and confuse Plaintiff.

62. Defendant had enough information to be aware of the fact that it was calling the wrong person. Nevertheless, it persisted with its phone call campaign in contacting the wrong individual, and knew that its conduct was inconvenient and harassing to Plaintiff.

63. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on a debt through incessant harassing phone calls to the cellular phones of consumers that do not legally owe such debt.

64. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

65. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff JAMES M. TIBOR respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as the Honorable Court deems just and proper.

**COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT**

66. Plaintiff restates and reallages paragraphs 1 through 65 as through fully set forth herein.

67. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

68. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

69. Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff and the alleged debt. Defendant specializes in debt collection, which is an activity within the stream of commerce and utilized in its regular course of business.

70. Defendant violated 815 ILCS 505/2 by engaging in unfair and deceptive acts in its attempts to collect the alleged debt from Plaintiff personally.

    **a. Unfairness and Deception**

71. It was unfair and deceptive for Defendant to relentlessly contact Plaintiff through means of an ATDS when it had no reason or permission to do so. Defendant was attempting to contact an entirely different person that Plaintiff had no relationship with. The fact that it was continuously calling the wrong party is illustrative of Defendant's unfair business practice.

72. It was unfair and deceptive for Defendant to seek to collect the alleged debt from the Plaintiff through relentless harassing phone calls to his cellular phone attempting to dragoon him into making a payment that he did not legally owe.

73. It was unfair for Defendant to place or cause to be placed numerous harassing phone calls to Plaintiff's cellular phone from March 2019 through the present day, using an ATDS without his prior consent.

74. It was unfair for Defendant to continue placing calls to Plaintiff after he demanded that the calls cease over the phone and in writing.

75. Defendant's unfair conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to his cellular phone.

76. Moreover, Defendant's unfair conduct is against public policy because it needlessly subjects consumers to unsolicited calls, resulting in a significant harm in the form of invasion of privacy and nuisance.

77. Upon information and belief, Defendant systematically places harassing phone calls to consumers in Illinois in order to aggressively collect debts in default or assumed to be in default to increase its profitability at the consumers' expense.

78. Upon information and belief, placing harassing phone calls to Illinois consumers who do not legally owe the debt is an unfair business practice willfully employed by Defendant and is done on a large scale.

79. Additionally, Defendant's unlawful and unfair debt collection efforts gives it an unfair competitive advantage over businesses that collect debts lawfully (companies who legally place calls with consent, as authorized, and who lawfully cease calling upon requests to stop).

80. As alleged above, Plaintiff was substantially harmed by Defendant's misconduct and incurred out of pocket expenses as a result of Defendant's unfair and deceptive business practice.

81. An award of punitive damages is appropriate because Defendant's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the never-ending phone calls.

**WHEREFORE**, Plaintiff JAMES M. TIBOR requests that this Honorable Court:

   a. Enter judgment in Plaintiff's favor and against Defendant;
   b. Award Plaintiff his actual damages in an amount to be determined at trial;
   c. Award Plaintiff his punitive damages in an amount to be determined at trial;
   d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
   e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: May 31, 2019                                     Respectfully Submitted,

/s/ Marwan R. Daher                                     /s/ Omar T. Sulaiman
Marwan R. Daher, Esq.                                   Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*                                 *Counsel for Plaintiff*
Sulaiman Law Group, Ltd.                                Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200                   2500 South Highland Avenue, Suite 200
Lombard, IL 60148                                       Lombard, IL 60148
Telephone: (630) 537-1770                               Telephone: (630) 575-8141
mdaher@sulaimanlaw.com                                  osulaiman@sulaimanlaw.com